**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **DEWAYNE BROWN,** | * | |
| Petitioner, | * | |
| v. | * | Civ. No. DLB-19-2251 |
| **WARDEN ALLEN GANG,** *et al.*, | * | |
| Respondents. | * | |

**MEMORANDUM OPINION**

Self-represented petitioner Dewayne Brown filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging the validity of his convictions. ECF 1. Respondents filed a limited answer seeking dismissal of the petition as time barred. ECF 5. Brown filed a reply and a supplemental reply. ECF 7 & 11. No hearing is necessary. *See* Rule 8(a), *Rules Governing § 2254 Cases in the U.S. Dist. Cts.*; Loc. R. 105.6 (D. Md. 2021); 28 U.S.C. § 2254(e)(2). For the following reasons, the petition is dismissed as untimely. A certificate of appealability shall not issue.

**I.     Background**

On June 25, 1991, a jury sitting in the Circuit Court for Baltimore City convicted Brown of first-degree murder, conspiracy to commit murder, kidnapping, assault, use of a handgun in a crime of violence, and two counts of carrying a dangerous weapon openly with intent to injure. ECF 4, at 11 (supp. exhibits). Brown was ultimately sentenced to an effective term of life plus 40 years. ECF 5-1, at 10.

The following facts are taken from the summary provided by the Court of Special Appeals of Maryland in its opinion affirming Brown's conviction on direct appeal. *See* ECF 5-1, at 10–12. Brown was a member of a drug gang. On the night of September 10, 1990, Shawn Thompson and

Antonio Robertson, who were also members of the gang, slept in Brown's stash house with approximately $900.00 in cash that belonged to Brown. When Thompson awoke the following afternoon, Robertson and the money were gone. After Brown arrived, Thompson explained that Robertson apparently stole the money, and Brown went to Robertson's house to look for him. Robertson's sister told Brown that Robertson was asleep, and Brown returned to the stash house.

A short time later, Robertson awoke and went to the stash house. Brown and Robert Antoine Brown ("R.A.B.") met him there. Brown asked Robertson, "Where's my money?" Brown then began to beat Robertson, hitting him with a pole, a golf club, and a "long 2 by 4" for approximately thirty to sixty minutes. Thompson, Garland Moore, and Daniel Carter arrived at the stash house, and Robertson accused Carter of taking the money. Brown and R.A.B. began to beat Carter, causing Carter's face to bleed and swell. Brown told Robertson and Carter that he was going to take them to the park and shoot them. He then moved them to the kitchen and resumed beating them. After a time, Brown left the room and returned with his gun.

Brown next accused Thompson of taking the money. He held the gun to Thompson's head and said, "If you don't tell me, I am going to kill you." Thompson pleaded for his life, and R.A.B. pulled him away from the gun. Brown then told Robertson to open his mouth. Brown inserted his gun into Robertson's mouth and said, "If you tell, I am going to kill your family." After Robertson promised not "to tell," R.A.B. ushered him out of the house.

A few minutes later, Brown, Moore, Thompson, and R.A.B. entered Brown's van, Carter was "put in the van," and the group rode to Druid Hill Park. At the park, Brown put his gun to Thompson's head and said, "If you don't kill [Carter], all of you will die." Brown then gave Thompson his gun. Moore and Thompson took Carter into a wooded area of the park several blocks from the van. Thompson could not bring himself to shoot Carter, so he handed Brown's

gun to Moore.  Moore closed his eyes, fired a single shot at Carter, and ran back to the van.  Thompson followed.  Carter died of a single gunshot wound.

Brown was charged alongside R.A.B., Moore, and Thompson.  *See* ECF 1-1, at 13 (indictment).  At Brown's trial, Moore, Thompson, and R.A.B. "all linked [Brown] to the murder of Daniel Carter."  ECF 5-1, at 13 (appellate opinion).  Robertson, who was not charged as an accomplice, corroborated their accounts.  *Id.*  Brown was convicted by a jury.  Brown's timely direct appeal to the Court of Special Appeals of Maryland was unsuccessful, and the Court issued an opinion affirming the judgment of conviction on May 15, 1992.  ECF 5-1, at 9-16.  The Court of Special Appeals' mandate issued on June 15, 1992.  *Id*. at 16.  Brown did not seek certiorari review in the Maryland Court of Appeals.  ECF 1 at 9, 51.

On January 5, 1998, Brown filed a petition for post-conviction relief, which the state court denied on December 3, 1998.  ECF 4, at 12.  Three years later, in 2001, Brown was granted the right to file an out of time application for leave to appeal the denial of post-conviction relief.  ECF 5-1, at 4.  The Court of Special Appeals dismissed the application due to other procedural deficiencies on June 24, 2002.  ECF 5-1, at 5, 17.  The court's mandate issued on December 26, 2002.  *Id.* at 18.  Once again, Brown did not seek certiorari review.

Brown did not file again in state court until August 16, 2010, when he filed a "Motion for Secondary Post-Conviction Proceeding."  ECF 5-1, at 5.  The motion was denied three days later.  ECF 4, at 12; ECF 5-1, at 6.  Over the next decade, Brown unsuccessfully filed a motion for modification and reduction of his sentence, two motions to correct an illegal sentence, and a motion for a show cause order.  ECF 5-1, at 6–7; ECF 4, at 12.  On May 21, 2019, Brown filed a state petition for writ of habeas corpus, which the circuit court denied on July 29, 2019.  ECF 4, at 9–20.

Brown filed his petition for writ of habeas corpus in this Court on July 26, 2019. ECF 1-1, at 6 (date of postmark on envelope). He generally alleges he was wrongfully convicted based on evidence fabricated and manufactured by the Baltimore City Police Department and Baltimore City State's Attorney's Office. ECF 1, at 3. He raises the same three claims he raised in his 2019 state habeas petition: (1) the trial court lacked jurisdiction due to defective and fraudulent indictments; (2) as a result, the trial court imposed an illegal sentence; and (3) his trial and appellate counsel were ineffective. *Id.* at 20, 54.

**II.     Standard of Review**

A one-year limitations period applies to petitions filed pursuant to 28 U.S.C. § 2254, counting down from the latest of four dates:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1).

The limitations period is subject to tolling in certain circumstances. The habeas statute provides that "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection." 28 U.S.C. § 2244(d)(2). In other

words, the federal clock is paused during the pursuit of state post-conviction relief, if the application for state post-conviction relief was properly filed.

The limitations period is also subject to equitable tolling "in those 'rare instances where—due to circumstances external to the party's own conduct—it would be unconscionable to enforce the limitation against the party and gross injustice would result.'" *Whiteside v. United States*, 775 F.3d 180, 184 (4th Cir. 2014) (quoting *Rouse v. Lee*, 339 F.3d 238, 246 (4th Cir. 2003) (en banc) (quoting *Harris v. Hutchinson*, 209 F.3d 325, 330 (4th Cir. 2000))). To equitably toll the limitations period, the petitioner must demonstrate "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." *Id.* (quoting *Holland v. Florida*, 560 U.S. 631, 649 (2010)). "The diligence required for equitable tolling purposes is reasonable diligence, not maximum feasible diligence." *Holland*, 560 U.S. at 653 (internal citations and quotation marks omitted). Extraordinary circumstances may involve "wrongful conduct" on the part of the government or other circumstances beyond the petitioner's control. *Harris*, 209 F.3d at 330 (quoting *Alvarez-Machain v. United States*, 107 F.3d 696, 700 (9th Cir. 1996)).

The Court may review an untimely petition that is not subject to tolling "only when there has been a 'fundamental miscarriage of justice.'" *United States v. Herrera-Pagoada*, 14 F.4th 311, 319 (4th Cir. 2021) (quoting *McQuiggin v. Perkins*, 569 U.S. 383, 392 (2013)). The miscarriage of justice exception applies where a petition shows that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray v. Carrier*, 477 U.S. 478, 496 (1986). Actual innocence is a basis for review of a petitioner's untimely claims where the petitioner demonstrates that, "in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him[.]" *Herrera-Pagoada*, 14 F.4th at 319 (quoting

*Bousley v. United States*, 523 U.S. 614, 623 (1998)); *see also Teleguz v. Pearson*, 689 F.3d 322, 329 (4th Cir. 2012) (stating a petitioner must "demonstrate that the totality of the evidence would prevent any reasonable juror from finding him guilty beyond a reasonable doubt"). "A valid innocence claim 'requires [the] petitioner to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial.'" *Hayes v. Carver*, 922 F.3d 212, 216 (4th Cir. 2019) (quoting *Schlup v. Delo*, 513 U.S. 298, 324 (1995)). The Court must evaluate "all the evidence, old and new, incriminating and exculpatory, without regard to whether it would necessarily be admitted under evidentiary rules," but with "due regard to any unreliability." *United States v. MacDonald*, 641 F.3d 596, 612 (4th Cir. 2011) (cleaned up). The Court then makes "'a holistic judgment about all the evidence and its likely effect on reasonable jurors applying the reasonable-doubt standard.'" *Carver*, 922 F.3d at 216 (quoting *House v. Bell*, 547 U.S. 518, 539 (2006)). The actual innocence standard "is demanding and permits review only in the extraordinary case." *Id.* at 218 (quoting *House*, 547 U.S. at 538).[1]

**III.   Analysis**

In this case, the one-year limitations period runs from the date on which the judgment became final, extended to the effective date of the Antiterrorism and Effective Death Penalty Act ("AEDPA"). The Maryland Court of Special Appeals' mandate in Brown's case issued on June 15, 1992. ECF 5-1, at 16. Brown had 15 days from that date to petition for certiorari with the Court of Appeals of Maryland, which he did not do. *See* Md. Rule 8-302(a). The 15-day period expired on June 30, 1992, and Brown's conviction became final on that date. 28 U.S.C.

---

[1] A "gateway" innocence claim is distinct from a substantive innocence claim. *Schlup*, 513 U.S. at 315 (discussing *Herrera v. Collins*, 506 U.S. 390 (1993)). In the latter, the petitioner asserts he is entitled to habeas relief based on his innocence alone.

§ 2244(d)(1)(A).  Nearly four years later, on April 24, 1996, AEDPA became law.  Among the changes made by AEDPA was the implementation of the one-year limitations period.  Although AEDPA is silent as to how the limitations period applies to persons whose convictions became final before April 24, 1996, the Fourth Circuit later ruled that such persons had one year from the statute's effective date to petition for habeas relief in federal court.  *Hernandez v. Caldwell*, 225 F.3d 435, 439 (4th Cir. 2000).  Thus, absent tolling, Brown had until April 24, 1997 to file a petition for federal habeas relief.  *See id.*

Brown argues that the one-year limitations period should run from a later date.  He argues his petition is timely under § 2244(d)(1)(D), which starts the limitations period on the date the petitioner could have discovered the factual predicate of a claim through the exercise of due diligence.  A useful summary of the relevant law regarding § 2244(d)(1)(D) is found in *Ford v. Gonzalez*, 683 F.3d 1230 (9th Cir. 2012), which the Fourth Circuit recently cited with approval.  *See United States v. Nunez-Garcia*, 31 F.4th 861, 866 (4th Cir. 2022).

> Section 2244(d)(1)(D) provides a petitioner with a later accrual date than section 2244(d)(1)(A) only if vital facts could not have been known by the date the appellate process ended.  The due diligence clock starts ticking when a person knows or through diligence could discover the vital facts, regardless of when their legal significance is actually discovered.  Although section 2244(d)(1)(D)'s due diligence requirement is an objective standard, a court also considers the petitioner's particular circumstances.  Just as the petitioner's particular circumstances may include impediments to discovering the factual predicate of a claim, they may also include any unique resources at the petitioner's disposal to discover his or her claim.

*Ford*, 683 F.3d at 1235–36 (internal quotation marks and citations omitted).  Like the diligence required to take advantage of equitable tolling, the diligence required by § 2244(d)(1)(D) is "reasonable diligence in the circumstances."  *Id.* at 1235 (quoting *Schlueter v. Varner*, 384 F.3d 69, 74 (3d Cir. 2004)).

7

Brown makes numerous factual allegations in his petition, but his indictments are the only facts relevant to his claims that he alleges he discovered recently. *See* ECF 1, at 17–18; ECF 1-1, at 9–17 (indictments). He claims the indictments are fraudulent and defective and were never submitted to a grand jury. ECF 1, at 20–29, 54. He alleges he first discovered his indictments when he received them during the litigation of one of his post-conviction actions; he does not specify which of his post-conviction actions or provide a specific date. *Id.* at 17. He states:

> Petitioner was never given a copy of any of the (6) six indictments while in Baltimore City Jail or during his jury trial, he was shown copies by his file of his attorney Morris Kaplan – never given a copy for his own personal file. It was not until his post conviction petition was filed came from the "archives" copies of most (now) exhibits, including the fraudulent indictments and statements made by his co-defendants . . . .

*Id.*[2]

Brown could have discovered his indictments through due diligence during his underlying criminal case. He does not allege anything prevented him at that time from requesting and receiving copies of the documents, only that his trial attorney did not provide him with copies. Indeed, he states in his reply that "[a]ll previous attorney's [sic] knew of these numerous deficiencies[,]" including the allegedly defective indictments. ECF 7, at 5; *see also* ECF 1, at 30 (stating Brown's trial attorney "knew the (6) indictments w[ere] defective"). In a similar case where a habeas petitioner claimed his indictment was defective, this Court held "[t]he facts upon which [the petitioner] relies to support his claim that his indictment was defective were known . . . and available to him from the onset of his state prosecution." *Davis v. Campbell*, No. RDB-19-30, 2019 WL 4806124, at *3 (D. Md. Oct. 1, 2019); *see also Gray v. Ballard*, 848 F.3d 318,

---

[2] Brown represents that all his claims are supported by additional proof, but "because of known cover-up actions by the State, all exhibits will not be presented to the Court at this time." ECF 1, at 5. The Court cannot rule based on unseen evidence.

8

323 (4th Cir. 2017) (rejecting § 2244(d)(1)(D) argument where the petitioner could have discovered the factual predicates earlier by investigating the trial proceedings and the evidence against him). The same logic applies here. Brown cannot invoke § 2244(d)(1)(D) as the triggering provision for AEDPA's statute of limitations because he knew or should have known about the indictments before his conviction became final.

Brown did not file a petition for federal habeas relief until July 29, 2019, more than twenty years after the limitations period expired on April 24, 1997. Thus, his petition is time barred unless statutory or equitable tolling applies or he qualifies for the actual innocence gateway exception to the statute of limitations.

Statutory tolling is not applicable here. Brown did not file for state post-conviction review until January 5, 1998, more than eight months after the limitations period expired. Accordingly, none of Brown's post-conviction proceedings tolled the one-year filing deadline under § 2244(d)(2). *See Ferguson v. Palmateer*, 321 F.3d 820, 823 (9th Cir. 2003) ("[S]ection 2244(d) does not permit the reinitiation of the limitations period that has ended before the state petition was filed."); *Hutchinson v. Florida*, 677 F.3d 1097, 1098 (11th Cir. 2012) ("In order for . . . § 2244(d)(2) statutory tolling to apply, the petitioner must file his state collateral petition before the one-year period for filing his federal habeas petition has run."). Even if Brown's post-conviction proceedings somehow tolled the limitations period, multiple years elapsed between the pendencies of Brown's efforts to secure state post-conviction relief, so the one-year limitations period would still have expired before Brown filed his federal petition.

Equitable tolling is not appropriate here. The Court advised Brown that he could submit evidence showing he is entitled to equitable tolling. ECF 6. In response, he argues: (i) the docket entries and other documents from his criminal case verify his illegal confinement; (ii) he is actually

9

innocent; (iii) he did not know that his indictments were defective or that law enforcement manufactured evidence and scared his juvenile co-defendants into lying; (iv) a letter signed by two of his co-defendants undermines their testimony against him; (v) he has exhausted his claims; and (vi) a gross miscarriage of justice would result if the Court rejects the petition as untimely. ECF 7, at 3–7. In a supplemental response, Brown reiterates his claim that he is innocent, attacks the integrity of the Court, and attaches a print-out regarding misconduct by members of the Baltimore City Police Department. ECF 11 & 11-1. Brown's arguments that he is innocent, that his claims are meritorious, and that he has exhausted his claims do not identify any external circumstances that prevented him from timely filing. His argument that he did not know about law enforcement misconduct fails because he does not claim misconduct prevented him from filing, only that he was unaware of the misconduct. Additionally, it appears that the information that notified Brown of the alleged misconduct consists of his indictments and documents from the criminal investigation, and as explained above, that information was available to Brown before his conviction became final. Last, the letter Brown refers to, which he attached to his reply, is dated "1994" and purportedly signed by R.A.B. and Moore. ECF 7-1, at 1–4. In relevant part, the letter states:

> Yo What Ponkey and Shawn did you didn't have no knowledge of the act that took place that night. And what I said in court I said it because I was scared and I did tell his lawyer that he didn't have anything to do with that in other words we lied on him.

*Id.* at 2. Even if the letter could somehow be construed as evidencing an extraordinary circumstance that prevented Brown from timely filing, Brown admits he was not diligent in pursuing relief after he received the letter. He states he "was saving the enclosed personal letter written . . . some years back[.]" ECF 7, at 4. Waiting twenty-five years does not constitute reasonable diligence.

10

Finally, Brown has not demonstrated a "fundamental miscarriage of justice" based on his actual innocence that would enable the Court to review his untimely petition. *See McQuiggin*, 569 U.S. at 392. The evidence of innocence Brown offers includes the letter from two of his co-defendants, as well as his indictments and other documents relating to the investigation, his arrest, and the trial court proceedings. He argues this evidence establishes that police and prosecutors fabricated evidence and coerced his juvenile co-defendants to lie about his involvement in the crime, resulting in his conviction. This is not the type of evidence, even if it were new, that would satisfy the *Schlup* gateway standard. Brown does not offer scientific evidence, an eyewitness account, or "critical physical evidence," for example. *See Hayes*, 922 F.3d at 216; *Schlup*, 513 U.S. at 324; *see also House*, 547 U.S. at 554 (allowing petitioner to pass through innocence gateway where new scientific evidence and expert testimony called into question "the central forensic proof connecting [the petitioner] to the crime" and substantial new evidence pointed to a different suspect). Instead, he points to a collection of investigative and trial court documents, asserting some are facially defective (his indictments), others are inconsistent (various docket entries), and still others are implausible (police reports that lack detail). ECF 1, at 12–15. But none of this evidence bears on Brown's factual innocence. The letter purportedly written by R.A.B. and Moore, while closer to the mark, lacks indicia of reliability. It is not an affidavit. Its contents were procured without the benefit of cross-examination. It is dated after the conclusion of Brown's criminal case, at a time when both he and the signing co-defendants were in prison. It purports to be signed by only two of the several witnesses who testified against Brown. Finally, it is very brief, lacks specificity, and contains no factual details about the events surrounding the crime. It is simply a belated and conclusory assertion of Brown's innocence. *See Schlup*, 513

11

U.S. at 332 (stating "the court may consider how the timing of the submission and the likely credibility of the affiants bear on the probable reliability of the evidence").

Considering all the available evidence, the Court cannot conclude that "it is more likely than not that no reasonable juror would have convicted" Brown. *See McQuiggin*, 569 U.S. at 395 (quoting *Schlup*, 513 U.S. at 329). A juror would view the letter and Brown's other documents alongside the evidence of Brown's guilt presented at his trial, including consistent inculpatory testimony from witnesses who did not sign onto the letter. The innocence gateway is reserved for truly extraordinary cases, and Brown's evidence falls short of reaching that level. *See Blackmon v. Williams*, 823 F.3d 1088, 1101–02 (7th Cir. 2016) (rejecting innocence claim despite new witness evidence in light of other witnesses whose trial testimony was not undermined).

Because the limitations period has expired and Brown has not established any basis for statutory or equitable tolling or a fundamental miscarriage of justice, Brown's petition is dismissed as untimely.

## IV.    Certificate of Appealability

Rule 11(a) of the Rules Governing Section 2254 Cases provides that the district court "must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Because the accompanying Order is a final order adverse to Brown, he must receive a certificate of appealability before an appeal may proceed. 28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22(b)(1).

A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a district court dismisses a habeas petition solely on procedural grounds, as here, a certificate of appealability will not issue unless the petitioner can "demonstrate both (1) 'that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right' and (2)

'that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.'" *Rose v. Lee*, 252 F.3d 676, 684 (4th Cir. 2001) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). Brown's pleadings fail to demonstrate that a certificate of appealability should issue. He still may request that the United States Court of Appeals for the Fourth Circuit issue such a certificate. *See* Fed. R. App. P. 22(b)(1); *Lyons v. Lee*, 316 F.3d 528, 532 (4th Cir. 2003).

## V.     Conclusion

Brown's habeas petition, ECF 1, is dismissed as untimely. The Court declines to issue a certificate of appealability. A separate order follows.

DATED this 22nd day of September, 2022.

_____
Deborah L. Boardman
United States District Judge